James F. McDONALD, as Executor of the Estate of George C. McDonald

v.

The UNITED STATES.

No. 366-69.

United States Court of Claims.

Jan. 22, 1971.

Frank J. Mizell, Jr., Montgomery, Ala., attorney of record for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This is a claim by the executor of the estate of Major General George C. McDonald, deceased, for return of that portion of General McDonald's retired pay deducted by the Government to provide an annuity for his widow.

General McDonald retired from the Air Force in 1950 following thirty-three years of distinguished service. Subsequent to that time, the Congress enacted the Uniform Services Contingency Option Act of 1953, 67 Stat. 501, Public Law 239, now known as the Retired Serviceman's Family Protection Plan (RSFPP) 10 U.S.C. §§ 1431-1436 (1968).

The purpose of the Act was to provide a plan whereby service members could "elect to receive, upon entering a retired status, a reduced amount of their retired pay during their lifetime in order to provide annuities for their surviving widows and minor children." S.Rep. No. 672, 83rd Cong., 1st Sess. (1953). Section 4(a) of the Act provided in part, as follows:

Under the conditions set forth in Section 3, an active or retired member may elect one or more of the following annuities, payable under this Act, in such amount, expressed as a percentage of the reduced amount of his retired pay, as he may specify at the time of election, in amounts equal to one-half, one-quarter or one-eighth of the reduced amount of his retired pay.

(1) An annuity payable to or on behalf of his widow, the annuity to ter-

minate upon her death or remarriage, whichever first occurs.

\* \* \* \* \* \*

(4) An annuity payable under the same terms and conditions as specified in (1), (2), or (3), of this subsection, with the additional provision that no further deductions shall be made from the retired pay of the member commencing with the first day of the month following that in which there was no beneficiary who would have been eligible to receive, upon the death of the member, an annuity payable under the election made by him.

\* \* \* \* \* \*

The Plan was to be actuarily sound and election to participate could not be revoked subsequent to retirement. In April, 1954, after receiving notification from the Air Force that he was eligible to participate, General McDonald, elected Option (1), quoted *supra,* which was intended to provide an annuity for his widow. He omitted to elect Option (4) which would have terminated his participation when he no longer had a beneficiary. At the time, General McDonald was about 62 years of age and his wife was some 13 years younger. The cost involved in this particular case was $151.18 per month, deducted from his retired pay, to provide a monthly annuity of $148.38 for his wife in the event of his death. The total cost of his participation from April 1, 1954, until April 15, 1968, when the deductions were terminated, was $25,473.83.

General McDonald was divorced from his wife in 1965. Because of his not having elected Option (4), the deductions from his retired pay continued despite his request, and he found it necessary to seek relief from the Air Force Board for the Correction of Military Records.

In July, 1967, he petitioned the Board to terminate the deductions from his retired pay and to refund him all deductions made throughout his participation in the Plan. He alleged that he had elected to participate in the Plan only at the insistence of his wife and that he did so without benefit of advice from appropriate Air Force officers concerning the full consequences of his decision. He alleged that his wife had "insisted upon and rushed me into signing the annuity option for her. I did not understand the ramifications of the Contingency Option program, nor the extent that it was automatic and non-revocable for the rest of my life. I really had no desire to participate in the program but signed without knowledge or understanding of the program, merely to appease my wife."

The Board granted partial relief by correcting the records to show that General McDonald had elected Option (1) *with Option (4),* thereby terminating his participation as of the date of his divorce. He subsequently received a check in the amount of $4,673.03, representing the deductions since his divorce. The Board, in its findings, held:

Considering the above, and the fact that proposed legislation will automatically authorize future participants to be released from the program when no eligible beneficiaries remain, applicant's appeal should be granted. We do not believe that release should be from date he entered the program as requested, for he had a beneficiary then and until his divorce in 1965. Release should be from date of divorce. \* \* \*

Following the death of General McDonald, plaintiff brought suit in this court for $20,800.80, the total amount of deductions prior to his divorce. Plaintiff charged that the defendant had taken decedent's property for its own use without just compensation and that the action of the Board in denying him the complete relief asked for was arbitrary and capricious. Defendant moved for summary judgment and plaintiff brought a like cross motion.

On the above facts, we find no basis, equitable or otherwise, to grant plaintiff

the relief he seeks. General McDonald agreed to give up a portion of his retired pay in order to provide protection for his wife. That protection, in the form of the annuity, covered her throughout the years of their marriage, and defendant, like an insurance carrier, bore the risk. There is no allegation of failure of consideration or mental incompetence or fraud, simply the stated desire of decedent to "appease" his wife. Plaintiff now contends that because the marriage was an unhappy one and in fact ended in divorce, that the protection already provided should be without cost. Plaintiff offers no legal support for this contention, merely the bald assertion that "the undisputed evidence before the Board showed the wife insisting and rushing plaintiff into signing the participation form without his really having a desire to participate in the program." General McDonald is not the first man to have committed himself to a particular course of action in order to "appease" his wife and then suffered the consequences.

Defendant's officers did not overreach General McDonald giving him grounds for recision or reformation. *Cf.* Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498 (1967), and cases cited; Ruggiero v. United States, 420 F.2d 709, 190 Ct.Cl. 327 (1970). There is nothing shown that would have put them on notice that General McDonald misunderstood what he was doing when he elected Option (1). There is nothing opaque about the papers General McDonald signed that might have caused him to misunderstand. If he did not read them correctly, he should have done so.

Plaintiff's charge of no just compensation is completely without merit. For the same reasons, his charge that the Board action was arbitrary and capricious must also be rejected.

In Paroczay v. United States, 369 F.2d 720, 177 Ct.Cl. 754 (1966), we held that the recovery of an ousted and reinstated employee for lost pay must be reduced by premiums on Government life insurance that were applicable.

The authority under which the Board acts is found in 10 U.S.C. § 1552, which reads in part as follows:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. * * *

The Board, in finding number 7 of its report, stated:

It is the conclusion of this Board that an error and injustice exists in this case. Though it can be said that applicant should have been more attentive in completing the USCOA form, and as such, he should be required to continue in the program, the Board cannot but state to the contrary. We believe that applicant's failure to elect Option 4 was no more than a misapprehension and misinterpretation. He should not be required to contribute to a survivorship plan without a beneficiary, and from which he nor his estate will ever receive an annuity.

The relief which seemed proper to the Board was to terminate General McDonald's participation in the Plan as of the date he ceased to have a beneficiary and to refund to him all sums deducted since that time. Whether or not the Board had the authority to recommend more extensive relief, its action here was neither arbitrary nor capricious, but entirely in keeping with its statutory purpose.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross motion is denied. Plaintiff's petition is dismissed.